IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAVID F. : | |
| : | |
| v. : | NO. 24-CV-2347 SWR |
| : | |
| MARTIN O'MALLEY, : | |
| Commissioner of Social Security : | |

**O P I N I O N**

SCOTT W. REID                                                                           DATE:  November 12, 2024
UNITED STATES MAGISTRATE JUDGE

David F. brought this action under 42 U.S.C. §405(g) to obtain review of the decision of the Commissioner of Social Security denying his claim for Disability Insurance Benefits ("DIB"). He has filed a Request for Review to which the Commissioner has responded. As explained below, I conclude that the Request for Review should be denied and judgment entered in favor of the Commissioner.

I.   *Factual and Procedural Background*

David F. was born on April 18, 1975. Record at 161. He obtained a college degree. Record at 185. He worked in the past as a chef and as a bartender. *Id*. On October 27, 2021, David F. filed an application for DIB. Record at 161. In it, he asserted disability beginning on August 26, 2021, as a result of pain in his right foot and his left upper extremity, and macular degeneration. Record at 161, 184.

David F.'s application was denied initially, and upon reconsideration. Record at 90, 101. He then requested a hearing *de novo* before an Administrative Law Judge ("ALJ"). Record at 111. A hearing took place in this matter on July 18, 2023. Record at 40. On November 15, 2023, however, the ALJ issued a written decision denying benefits. Record at 11. The Appeals

Council denied David F.'s request for review on May 10, 2024, permitting the ALJ's decision to serve as the final decision of the Commissioner. Record at 1. David F. then filed this action.

II.     *Legal Standards*

The role of this court on judicial review is to determine whether the Commissioner's decision is supported by substantial evidence. 42 U.S.C. §405(g); *Richardson v. Perales*, 402 U.S. 389 (1971); *Newhouse v. Heckler*, 753 F.2d 283, 285 (3d Cir. 1985). Substantial evidence is relevant evidence which a reasonable mind might deem adequate to support a decision. *Richardson v. Perales*, *supra*, at 401. A reviewing court must also ensure that the ALJ applied the proper legal standards. *Coria v. Heckler*, 750 F.2d 245 (3d Cir. 1984); *Palmisano v. Saul*, Civ. A. No. 20-1628605, 2021 WL 162805 at *3 (E.D. Pa. Apr. 27, 2021).

To prove disability, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him from engaging in any 'substantial gainful activity' for a statutory twelve-month period." 42 U.S.C. §423(d)(1). As explained in the following agency regulation, each case is evaluated by the Commissioner according to a five-step process:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in §404.1590, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.

20 C.F.R. §404.1520(4) (references to other regulations omitted).

Before going from the third to the fourth step, the Commissioner will assess a claimant's residual functional capacity ("RFC") based on all the relevant medical and other evidence in the case record. *Id*. The RFC assessment reflects the most an individual can still do, despite any limitations. SSR 96-8p.

The final two steps of the sequential evaluation then follow:

(iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. (v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make the adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

*Id*.

III.   *The ALJ's Decision and the Claimant's Request for Review*

In her decision, the ALJ determined that David F. suffered from the severe impairments of bilateral macular degeneration, retrocalcaneal spur of the right ankle, depression, and anxiety. Record at 13. She found, however, that no impairment or combination of impairments met or medically equaled a listed impairment. Record at 15-17.

As to David F.'s RFC, the ALJ wrote:

After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR §404.1567(b) except he can only occasionally operate foot controls with the right. He can never climb ladders/ropes/scaffolds. He is not able to read very small print. The claimant can perform simple, routine tasks, and make simple work-related decisions. He can have occasional contact with the public, frequent with supervisors and co-workers. He is limited to work involving occasional changes in the work setting.

Record at 17.

Relying upon the testimony of a vocational expert who appeared at the hearing, the ALJ found that David F. could work as a garment sorter, hand packager, or cleaner. Record at 21. She decided, therefore, that he was not disabled. Record at 22.

The *pro se* Request for Review filed by David F. focuses on his interactions with Social Security administrators, the ALJ, and with the consulting medical examiners, but does not challenge any specific element of the ALJ's decision or cite to the medical record. Nevertheless, David F. is clearly challenging the determination that he was not disabled. Accordingly, I will review the ALJ's decision to determine whether it is fully supported by substantial evidence, as required by the SSA regulations.

IV.  *Discussion*

    A.  *David F.'s Testimony*

At his hearing, David F. testified that he was terminated after falling at work in September, 2021. Record at 46. He also testified that, even prior to the 2021 fall, he was experiencing "excruciating pain" and weakness in his right hand, and in his right arm, up through the elbow. Record at 47. At the same time, he experienced pain from a 2007 accident which resulted in surgery on his left wrist and right foot. Record at 52. He treated his pain with over-the-counter analgesics. Record at 51. He also described suffering from sciatica, although he had not had a back x-ray to confirm this. Record at 57-8. Once he lost an area of vision for a few minutes, although his opthalmologist said this was not caused by his macular degeneration. Record at 66.

David F. also testified that he could lift 35 pounds, and walk three blocks at a time. Record at 59. He used a cane, but it was not prescribed by a doctor. Record at 59, 60.

According to David F., he spent most of the day watching TV, but he also cooked dinner and kept the kitchen clean. Record at 62.

The ALJ took note of this testimony. Record at 17-18. She also noted David F.'s testimony that he was depressed and had a history of suicide attempts. Record at 18, 62. His general practitioner had prescribed Lexapro, which was helpful, but he stopped using it because he could not afford the co-pay, Record at 18, 62-5.

The ALJ decided that David F.'s medically determinable impairments could reasonably be expected to cause the symptoms he alleged, but that his statements concerning the intensity, persistence and limiting effects of his symptoms were not entirely consistent with the medical and other evidence in the record. Record at 18. She explained:

> [T]he claimant's complaints of right arm pain, dropping things and sciatic pain are not supported by any objective medical evidence. Moreover, his injuries to his left arm occurred many years ago and there is not any objective evidence to support a finding that the claimant has any limitations in the use of his left arm. I also note that his right foot impairment occurred many years ago and he continued to work, despite his complaints of right foot pain. Although the updated records show a spur, this is insufficient to support a finding of such severe limitations as alleged in his ability to stand and walk. The records also do not document a medical need for a cane. He does not have any weakness, atrophy, or decreased range of motion in his lower extremities. The claimant's mental status exams do not indicate work-preclusive limitations. He has complained of anxiety and depression but admitted that his medication helped. He also alleged some suicidal thoughts and one attempt during the period at issue, but this is not substantiated by the medical records.
>
> The claimant also complained of visual difficulties in that, on one occasion, he could not see the contents of a pot while he was cooking. The records do not indicate any other such occurrences or any additional limitations, other than difficulty reading small print.

Record at 18.

As set forth in the forthcoming review of the treatment records and consultative examinations, the ALJ's description of the evidence in the file was accurate. Thus, her

5

conclusion that David F.'s testimony was inconsistent with the record was supported by substantial evidence, as explained below.

      B.    *Treatment Records*

The record does not contain many treatment notes related to David F.'s physical conditions. As the ALJ noted, there is no proof of treatment for his right arm or for sciatica. A March 10, 2022, x-ray of his right ankle showed a spur, but no fracture, dislocation or bony lesion, and "relatively well-maintained" joint spaces. Record 277. An x-ray of David F.'s left arm on the same day was negative, other than the presence of the implant from his earlier surgery. Record at 278. The single treatment note from the office of Larry Kramer, D.O., David F.'s general practitioner, describes only acid reflux as a physical complaint, and a history of vertigo. Record at 301. There is no record of treatment for vertigo in the record.

Following an ophthalmology examination on April 25, 2022, Zissie Soikos, O.D., found that David F. had normal visual fields in both eyes, and 20/25 corrected vision. Record at 283, 285. Dr. Soikos opined that David F.'s vision would not permit him to read very small print, but that he could avoid normal workplace hazards, read ordinary print, view computer screens, and discriminate between small items such as nuts or bolts. Record at 291.

Dr. Kramer also noted that David F. suffered from anxiety, and described him as "nervous/anxious." Record at 301. As noted, Dr. Kramer prescribed Lexapro for him during some of the relevant period. Record at 18, 62, 186, 315. At his hearing, David F. told the ALJ that he attempted suicide in the spring of that year by walking in front of a moving car. Record at 64. However, he then added: "I didn't even know what just happened. So, I don't know what happened. And I'm not going to even say that was a suicide attempt because it was – because I don't have any, like – I was disoriented." Record at 64-5.

In any event, David F. did not seek physical or mental treatment at a hospital after being struck by the car. Record at 65. Indeed, there is no record of treatment by any mental health professional in the relevant period.

    C.    *Medical Opinion Evidence*

        1. *Physical*

David F. was examined by consulting medical expert Dana Ridley, N.P., on March 10, 2022. Record at 262. She listed his complaints as pain in the right foot, and left arm, hand, wrist, and elbow, as well as macular degeneration. *Id*. Physical examination, however, revealed that David F. had a normal gait and stance, and could squat fully, and heel and toe walk. Record at 264. His corrected vision was 20/25. *Id*. His musculoskeletal examination was normal, with stable and nontender joints, and no joint deformity. Record at 265. All extremities were normal, with no evident muscle atrophy. *Id*.

Further, Nurse Practitioner Ridley found that David F.'s fine motor activity with his hands was normal, and that he could zip, button, and tie, and had full grip and pinch strength. *Id*. She wrote: "He was fine despite the plate in his arm. I did not see any limitations." *Id*. He could manipulate objects such as a coin or a cup. *Id*.

Accordingly, Nurse Practitioner Ridley indicated that David F. had no limitation in lifting or carrying. Record at 267. He could sit for four hours at a time, for a total of eight hours; and stand or walk for an hour each at a time, for a total of four hours each in an eight-hour workday. Record at 268. He had no limits in reaching, handling, fingering, or other use of his arms and hands. Record at 269. He could operate foot controls only occasionally with his right foot, and could climb stairs and ramps only occasionally, but was otherwise unlimited in postural

activities. Record at 269-270. He could not read very small print, but could read ordinary print, view a computer screen, and discriminate small items by shape or color. Record at 270.

The ALJ accepted Nurse Practitioner Ridley's limitations as to the operation of foot controls with the right foot, and the inability to read very small print. Record at 19. However, because of David F.'s normal physical examination, the ALJ did not accept that he had any limitations in sitting, walking, or standing. *Id*.

Agency reviewing physicians Karel Ann Keither, D.O., at the initial level, and Marie T. Brislin, D.O., upon review, found that David F. had not proved the existence of any severe physical impairment. Record at 74, 81. The ALJ, however, found these opinions unpersuasive, since David F. had shown a severe vision impairment, and right foot impairment. Record at 19.

2. *Psychological*

Arletha Kirby, Ph.D., a consulting psychologist, met with David F. on February 8, 2023. Record at 314. She diagnosed him with unspecified depression, anxiety, and adjustment disorders. Record at 319. She called his intellectual functioning borderline, his insight poor, and his judgment only fair. *Id*. She saw evidence of circumstantial thinking, although David F. was fully oriented, with no hallucinations or delusions. Record at 318. His affect and mood were anxious and irritated. *Id*.

David F. described a significant history of mental health treatment, with several hospitalizations in his youth for depression. Record at 315. He told Dr. Kirby of arrests for disorderly conduct in 2005 and 2008, with one of them apparently related to alcohol use. Record at 317. He said he had made suicide attempts in the past, but had given up making them, since they always "fail[ed] miserably." Record at 316. He said that he was more depressed since his mother's death, and that he argued with his father, who no longer spoke to him. *Id*.

Dr. Kirby wrote: "Although cooperative [David F.] tended to jump from one topic to another, he was speaking quickly and it was difficult to follow his train of thought. He would often interrupt the evaluator's questions with stories that were unrelated to the questions provided. He often went off on tangents and it was often difficult to redirect him to answer questions." *Id*.

Nevertheless, Dr. Kirby found that David F. would have no limitations in understanding and remembering or carrying out simple instructions. Record at 321. He would be only mildly limited in the ability to make judgments on simple work-related decisions. *Id*. The ALJ found Dr. Kirby's opinion to be persuasive, and well-supported by her mental status examination. Record at 19.

No agency mental health expert reviewed David F.'s records at the initial stage of review, presumably because it was not clear at that point that he alleged a mental impairment. However, upon reconsideration, his records were reviewed on February 20, 2023, by Richard Frederic Small, Ph.D. Dr. Small opined that David F. had mild limitations in his ability to understand and apply information, but moderate limitations in his ability to interact with others; concentrate; and adapt and manage himself. Record at 83. Dr. Small also opined that David F. was not significantly limited in the ability to carry out short and simple instructions, or to carry out detailed instructions. Record at 86. He could make simple work-related decisions, and could sustain an ordinary routine without supervision, and work in proximity to others. *Id*.

The ALJ found Dr. Small's opinion persuasive. Record at 20. However, she clarified that she did not find that David F. was limited to one and two-step tasks. *Id*. She wrote: "[A limitation to] simple, routine tasks is consistent with unskilled work and refers to applying

commonsense understanding to carry out detailed but uninvolved written or oral instructions" which could involve more than one or two steps. *Id*.

  The ALJ summarized her view of the opinion evidence as follows:

> Based on the above exams and persuasive portions of the above opinions, the claimant's bilateral macular degeneration precludes him from reading very small print. His retrocalcaneal spur of the right ankle limits him to performing light work with only occasional operation of right foot controls and never climbing ladders, ropes, or scaffolds. His depression and anxiety with a history of difficulty with familial relationships, some tangential thoughts and some difficulties with attention, concentration, and memory on exam, limit him to performing simple routine tasks and making simple work-related decisions and performing work involving only occasional contact with the public, frequent contact with supervisors and coworkers and only occasional changes in the work setting.

Record at 20.

  D. *David F. Has Not Identified an Error in the ALJ's Decision*

  Unquestionably, the ALJ fulfilled her duty of articulating a decision which permitted judicial review. *Burnett v. Commissioner of Social Security*, 220 F.3d 112, 119 (3d Cir. 2000). She summarized David F.'s testimony, and then evaluated it in light of the objective medical evidence, treatment notes, and medical opinions, each of which she discussed in detail, noting inconsistencies and pointing out where she agreed or disagreed with the evidence, and why.

  Further, it is clear from the above discussion of the ALJ's decision that it was adequately supported by substantial evidence, as required by the Social Security Act. 42 U.S.C. §405(g); *and see Richardson v. Perales*, 402 U.S. 389 (1971) *and Newhouse v. Heckler*, 753 F.2d 283, 285 (3d Cir. 1985). The ALJ pointed to such relevant evidence as a reasonable mind might accept as adequate. *Richardson*, *supra*. Indeed, it is doubtful that the largely benign consultative examinations and objective testing could have supported a finding of disability.

Finally, David F. called his hearing before the ALJ "a disaster" in his Request for Review, and said that the ALJ was "very short and curt" with him. ECF Doc. 9 at ECF page 8/12. However, he has not alleged that the ALJ was biased against him, and certainly has not shown that her behavior was "so extreme as to display a clear inability to render a fair judgment." *Nicole F. v. O'Malley*, Civ. A. No. 23-4690, 2024 WL 4275186 at *12 (D.N.J. Sep. 24, 2024); *Ball v. Commissioner of Soc. Sec.*, Civ. A. No. 18-159, 2019 WL 4722492 at *1, n.1 (W.D. Pa. Sep. 26, 2019). Expressions of impatience are not sufficient to show bias. *Ball*, *supra*.

As a whole, therefore, David F. has not shown an error in the ALJ's decision and cannot be said to have demonstrated a basis upon which this Court could grant relief.

V.      *Conclusion*

In accordance with the above discussion, I conclude that the Plaintiff's Request for Review should be denied, and judgment entered in favor of the Commissioner.

BY THE COURT:

*Scott W. Reid*

_____
SCOTT W. REID
UNITED STATES MAGISTRATE JUDGE